Good morning, Your Honors. Bradley Vesosky for the United States. May it please the Court, Counsel. Your Honors, we believe this is a fairly simple appeal this Court has held, that when the District Court receives credible allegations of outside influence on the jury, it's an  In this case, the District Court obviously found credible allegations of an outside influence, having granted the defendant's motion for new trial based on that, but did not hold a hearing. And therefore, we believe that the District Court reversibly erred. When was the first time you requested a formal evidentiary hearing? Your Honor, we requested, well, two things. There was a teleconference a week after the verdict, at which we raised the issue of how can the defendants support their motion for new trial without a hearing. And in response, the judge said that he would not allow the juror to testify, which we believe was wrong under the law, but that he had made the CSO, CSO Collins, available to the parties. And that following Monday, we, according to the Court's procedure, emailed his law clerk a proposal, because the Court was a little, had some misgivings about formal hearings and having his Court staff involved in open court, we proposed to submit written interrogatories that the CSO would answer under oath. And the contemplation was that the parties would get together, jointly submit questions, and then the judge would make a ruling on those questions and submit them to the CSO. So when was it that you formally requested an evidentiary hearing or told the District Court that the District Court was erring for not having a formal hearing on the record? That would have been in our response to the motion for new trial. Now, we did argue that the Court could deny the motion for new trial without a hearing, and that is ... Did you object to the procedures that were employed in a timely manner, while the District Court could still change them? Well, Your Honor, we were never given the opportunity to raise such an objection, because at the time of our proposal for the CSO to answer written interrogatories, there was no order granting the motion for new trial. So from the government's perspective, our proposal was still out there, and also in our response to the motion for new trial, we argued that the Court could not grant the motion without an evidentiary hearing. Did you file for reconsideration at that point or try to mandamus the Court or anything that would have alerted the Court that you were objecting specifically to the procedures employed? We did not file a motion for writ of mandamus, Your Honor. Did you file for reconsideration at that time, saying that you objected to the procedures employed? No, Your Honor, but the District Court itself understood us as requesting an evidentiary hearing. You might have requested it, but how did the District Court know that what you were doing, what the District Court chose to do as sort of a compromise, was something that you actually believed was error and reversible error, a decision, a serious error? Well, we first raised the issue at the teleconference, saying that we believed that the defendant could not support their motion without evidence. That's a different thing than telling the District Court that the procedure the District Court chose is erroneous. Were we the first Court that you told that to? Well, the District Court understood us as requesting an evidentiary hearing, and Judge Mazzant ruled in his written order, I understand the government has requested an evidentiary hearing, but it would be essentially pointless in this case, because in his mind, the record was sufficient, and a hearing would raise all sorts of difficult issues about this. Could you explain to him why it wasn't pointless, and say, no, Your Honor, you're wrong. It's not pointless. We have other . . . if you don't do it this way, it's a big deal to us. The procedure matters to us, so your accommodations don't work here, Your Honor. What did you tell him then? Well, I don't think that we had an obligation to question or file a motion for reconsideration based on the Court's order granting a new trial. The statute allows the government to appeal from an order for a new trial. But there had been a lot of loose . . . well, loose maybe is not the right word . . . some informality in the way that the juror had been talked to earlier, and everybody agreed that the Court could talk to . . . I mean, there had been some things already where the Court had had some leeway, and everybody was very comfortable with that. Well, I think there are two . . . So the Court could be led to believe that as long as the Court addresses the subject matter, the Court has some leeway in how it's addressed. Well, Your Honor, I think there are two separate issues there. One is the ex parte meetings with the District Court with the juror, and that occurred during the deliberations. All parties agreed to that process, and I think it's important to point out that that was in response to a jury note, and it was not a jury note saying that the jury was hopelessly deadlocked. It was a note about the physical condition of juror number 11 that she could not continue, and all parties consented to have the District Court meet with that juror about that issue. Of course, the parties had no notice that a court security officer would speak with the juror during the deliberations. The fact that it happened, why isn't that . . . How are you prejudiced by not having an evidentiary hearing given that we all know what the substance of it was in general, and the substance is, of course, was inappropriate? Well, two things, Your Honor. One, we don't fully know the substance of it. So you think that the . . . We just have what the CSO told the law clerks. We have what the CSO told the law clerks in casual conversations in, like, Sixth Amendment terms. It was not a testimonial statement. He was not telling the law clerks the full extent of the conversations that he had with any juror for purposes of litigation. It was just casual water-cooler talk after a long trial. How does the text of Rule 33 support your position? It just says, upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. Why isn't that text pretty broad in giving the District Court discretion? I think it is, Your Honor. It's broad, but our argument is based on this Court's construction over many years of this precise scenario when there is a hint or an allegation of outside influence on the jury, and the Court has said over and over again, and most particularly in the Sylvester case, that if that happens, no matter how diligent the Court's ex parte inquiry, no matter how And it's not just the appellees argue that, oh, well, here there's already sufficient reliable evidence in the record, so a hearing would be pointless. Well, one, we have issues with the substance of what's in the clerk's memo, but two, the bigger point to be made is the Court still said that an ex parte hearing is insufficient, and all we have to go by is the product of the Court's ex parte inquiry. It's a hearing based on documentary evidence as opposed to oral evidence. Well, it's how the Courts over the years, they call I'm talking about this case. Oh, right. This case was not an ex parte. It's not like Judge Mazant called in the CSO into his chambers and talked to him and then said based on that, I'm going to grant a new trial. He publicized to you all what it is he relied on, which was documentary evidence from the law clerks. That was the hearing. It just wasn't an oral hearing. That's what you're complaining about. Well, and that it was an ex, it was an ex parte in the sense that the parties were not involved. And, and in the Sylvester case, for example. Ex parte to me is when you conduct something outside the presence of the parties, but here the law clerks submitted these documents stating what happened, and that was furnished to the parties. It's similar to you filing an affidavit and copying your opponent. You wouldn't consider that ex parte because the other parte saw it. Well, but I think an examination of the cases helps understand this issue. For example, in Sylvester, there were various reports of outside contacts, calls to juror members to try to persuade them, a comment in the parking lot. And so there, the district court interviewed each juror in his chambers and offered to make the transcript of that, of those meetings available to the parties. And from all we can tell from the published decision, they were made available. In the court, this court said that that still was not sufficient. That no matter how diligent the court's ex parte inquiry, and there you had actual testimony or conversations that were transcribed from the jurors to the judge, whereas here, the relevant witnesses, as far as we know, were never questioned. So let me ask you a yes or no question, and then I have a follow-up. Do you have any case in which the district court granted a new trial and we then reversed that for failure to have an evidentiary hearing, granted a new trial and requested by the defendant? No, Your Honor, and the Jordans have not cited any case under these particular facts where there were allegations of outside influence, there was no evidentiary hearing, and the court granted the new trial. In the case at all you're relying on, it seems to me, primarily, if not exclusively, is the failure to grant a new trial and the defendant is saying, we need an evidentiary hearing. Is that a fair assessment? That is, Your Honor. So the follow-up I have to that, it seems to me that one way to look at this, and Judge Maisant may have looked at it this way, is that what you're really, the concern here on whether a new trial is justified or not is whether what the CSO said, whatever exactly it was, influenced this juror, and you had fairly quick resolution of the jury after this conversation, and so it seems to me that further elaboration of exactly what was said is still not going to get to the key question of what influence did this have on that juror, and so looking at what he had and deciding what the rights of the defendant were in here as well as the government, he decided this is really about the best we can do and there's enough question here, I'm going to grant a new trial. Why is that an abuse of discretion? Because this court's case law requires an evidentiary hearing under those circumstances. There's no case that I can't . . . There needs to be a purpose for the evidentiary hearing, and what I'm trying to suggest is can a district judge decide there's no purpose for an evidentiary hearing in this case despite good Mr. Sylvester and whoever else is out there? Well, and the purpose is to determine what happened, and that's what this court said in the Forrest case . . . Well, what I'm trying to get to is what happened is not the key here. We know basically what happened. You had this conversation and basically the words that were used, and what happened is what effect did that have on the juror, and you're not going to find that out in an evidentiary hearing. Well, but that's always the case in these . . . More so here, I think, where it really is to what ramifications that juror who was so stressed and whatever else and didn't want to be the only holdout and he gets these comments, she does, gets these comments from the CSO, and it was a difficult situation for Judge Masson, but I mean, we can have a bright line rule that you say is already there so we don't need to worry about creating it, that there always positively has to be, but it seems to me the case law is not that stringent, and here might be a situation where no hearing would have mattered. Well, that's the thing. It's uncertain, Your Honor. I mean, it may well be that the CSO made comments that were less favorable to the government than are already in the memo, but . . . What we do know is this juror had been a holdout and 30 minutes after talking to the CSO became a non-holdout. That sounds like these employment cases where you say, Mr. Boss, I'm pregnant, and then he says you're fired. We typically think that kind of timing is highly relevant. Well, I think that's exactly what needs to be explored at the hearing, Your Honor. There's a lot of discussion about this juror being a holdout in the sense that she was going to hang the jury because she was going to find the defendants not guilty. And everything from the available record that we have and the only true record that we have is the court's conversations with the juror during his ex parte conversations. The suggestion from that, I think the reasonable inference is that this was not a juror that was going to vote not guilty. She was just uncomfortable sitting in judgment of these particular defendants, and that's a very different issue. And I think that that puts a different light on the outcome if, for example, which we don't know at this point, if this juror thought, in fact, that these defendants were guilty, but she just felt uncomfortable sitting in judgment of them. And the things that she said to Judge Mazant, for example, I'm a nice person. I just can't do this. She never said that the jury is deadlocked. This was not a deadlocked jury. This was a near month-long trial, and the jury had only deliberated a day and a half. So it wasn't like this was a jury that required an owl instruction. The only reason he spoke with the juror to begin with was because of her assertive physical illness. And that is something that could and should be explored at an evidentiary hearing. Your Honor, what about the point that it's too late to hold an evidentiary hearing? We don't even know where these people are anymore, and are we going to put this back together again? And we have had other situations where we've said, no, it's too late to put it back together again. How do you please, please answer the question. Thank you, Your Honor. Well, that would always be the case. No, it would not always be the case. That's what you argue in your brief. But you could have expeditiously requested, well, you could have tried to mandamus the court if they were not going to grant you the hearing that you sought. But also, you could have filed for an expeditious appeal so that it wouldn't be nine months or almost a year after the fact now by the time we get around to this. Isn't it almost a year now? Almost a year, Your Honor. A year later, people don't even necessarily live. How do they remember? I mean, that's a long time to have before the hearing. So how can we give you what you seek? You seek a hearing. How can we give a hearing this long after the fact? And how do you respond to our case law that says at some point it's too late? Well, just as this court did in Haring where it was one year and eight months between the time, in Sylvester it was one year and nine months. In Tarango, a Ninth Circuit case relied on by the Jordans, it was ten years and four months. This is not even a year has passed. We're at 11 months right now, so we're actually less the time than in cases where this court has remanded for an evidentiary hearing when in those cases there was far more evidence before the court on which to make a decision. There were affidavits from jurors. There were meetings with the judge with the jurors. Here we don't have an affidavit. We have no statement from the CSO. We have no statement from the jurors. All we have is an after-the-fact recollection of the law clerks with the CSO. Do you agree that the CSO said anything? I mean, are you saying that we don't know that the CSO said anything, or is it just the content of what the CSO that's in dispute? I'm sure, Your Honor, that the CSO said something. I mean, there's no question. Well, the CSO shouldn't have said anything. Oh, absolutely. But, I mean, the parties had no control over that, Your Honor, and what he said is very much relevant, and that's why we ask, and that was the chart that we left. Actually, it could be that it's the, it's like Judge Southwick said, it's the effect of what he said, not what he, not specifically what he said. Well, that's always the, that's, Your Honor, the ultimate prejudice determination, and as this Court said in Howard, you have to first know what the precise content of the communications were, and the Jordans admitted below that without an evidentiary hearing, this is from their brief, without an evidentiary hearing, we do not know what the precise nature of the comments are. Okay. You've saved time for one other. Thank you, Your Honor. Good morning. Barry Pollack on behalf of Laura and Mark Jordan. If it may please the Court, I'd like to start, Judge Elrod, with the question that you posed to the government about the request for an evidentiary hearing below, and the government said that they asked for one in the opposition to their, to our motion for a new trial. What the government said at page 12, and that's in the record at 1394, page 12 of their brief, they so say, though the Court can deny the motion for a new trial at this stage based on the lack of competent evidence, it cannot grant the motion, at least without holding an evidentiary hearing. The government provides no cite for that proposition. Rather, it goes on to say, a district court is not required to conduct a full-blown evidentiary hearing in every instance in which an outside influence is brought to bear upon a pettit jury. The government does not argue at all, as it does here, that in fact the Court is required in every case to hold an evidentiary hearing. I'd also like to respond, Judge Haynes, to your question about doesn't Rule 33 answer the question. Rule 33 does not require that a hearing be held. And the drafters of the Criminal Rules of Procedure, Criminal Rules of, Federal Rules of Criminal Procedure clearly knew how to specify when a hearing did need to be held. Compare it to Rule 32.1b, which says that a hearing must be held before revoking probation or supervised release. The criminal rules also say that a motion can be supported by an affidavit. That's in Rule 47b. But if our precedent has gotten the rules wrong, we're still bound by our precedent. So then that leads us to these cases that are actually factually quite different, it seems to me, but nonetheless seem to have these broad statements of you've got to have a hearing. So how do we deal with the fact that we're bound by those precedents, right or wrong? Well, I think, Your Honor, that the government reads too much into where I would agree there is some loose language about holding a hearing. But first of all, none of those cases say that it has to be a full-blown evidentiary hearing under the rules of evidence where hearsay would not be permitted. None of those cases say that. Secondly, in terms of the case law, I'd point the Court to United States v. Jobe, a Fifth Circuit case from 1996, where the Court said, the procedures used to investigate allegations of juror misconduct and the decision as to whether to hold an evidentiary hearing are matters which rest solely within the sound discretion of the district court. Now, the government argues, well, that might be true when we're talking about juror misconduct, an intrinsic influence, but it's not true when we're talking about an extrinsic influence. But the case law that the government itself cites does not support that distinction. There is a case, United States v. Sotelo, where this Court, also a 1996 case, that is a cappelli for the proposition that in an external influence case, the district courts have less discretion than in an internal influence case. But the Sotelo Court said, regardless of the extrinsic, intrinsic classification, the trial court has broad discretion, and the ultimate inquiry is, did the intrusion  on this? Sometimes we say you've got to do it. Sometimes we say you've got a lot of discretion. Are you going to swear all of this? Well, yes. First of all, none of the opinions say that it has to be an evidentiary hearing where the rules of evidence apply. Well, you know, I don't think this rules of evidence argument is getting anywhere. The question is, really, did the CSO need to testify in some form or fashion, whether        I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. I don't know. They don't have to be literally, ex parte, part a, any of that. And there is no court. There is no decision of this court that says that there is a bright line rule in terms of you can't use reliable evidence of what somebody says, because even if it is reliable, it didn't comply with the rules of evidence. I mean, that really is the argument that the government is making. You can't determine what the CSO said based on the near contemporaneous recording of the unbiased law clerks who are under a duty to report accurately. And there are three of them that agree on the basics of what the CSO says. You can't use that. You have to go directly to a sworn statement from the CSO. There's nothing that supports that. I think, Judge, please. I also want to cut you off to have you elaborate a little bit on what you just said. It seems to me that one of the things your friend on the other side was pointing out, that this wasn't an interrogation by lawyers of the CSO. This was picking up on what the CSO felt like mentioning in conversation with the law clerks. Revelations from actual questioning, friendly questioning, but nonetheless, actual questioning to figure out all of what was said, context for it, might have uncovered useful additional information. What's your reaction to that? It might have been. There's no question. But that's not the— Isn't this too informal— No. —a providing of evidence by the CSO to be as reliable as Judge Mazzant took it to be? Your Honor, I think if this Court were reviewing DeNovo, whether or not he employed the optimal procedure, I think that that would be a good argument. Maybe we could have learned more if we had heard directly from the CSO. But I think the case law is very clear that that is not what this Court does. Rather, this Court defers the broad discretion of the trial court because the trial court has a better feel for these issues, and the decision as to how to proceed, how to conduct the interview or the inquiry, falls within the broad discretion of the trial court. And there are a number of cases of this Court that say that. Counsel, one of the things that seems to be part of this case is the reluctance of Judge Mazzant to do so under any kind of questioning in court or in chambers or wherever it may have been. And maybe that was a unnecessary and unreasonable reluctance is a concern that I have. It's a very important matter after a lengthy trial to find out some basis, even if you're not going to talk further to the juror, of is there enough of concern here about possible reaction to it that we need to know better what happened. I mean, would you accept that, that there is in this record pretty good support that Judge Mazzant just did not want to call the CSO? I think it's a bit mixed, Your Honor. First of all, one problem that we all have here is that Judge Mazzant initially calls the party's attention to this issue in an in-chambers conference the day after the verdict is returned. So we don't have a transcript of that conference. A week later, on March 15th, there is a telephonic conference that there is a transcript. In that conference, Judge Mazzant says that he had previously offered that the CSO could be made available for examination, presumably meaning at a hearing of some sort, and that, quote, none of the parties had taken him up on that offer. Then he asks the parties to confer to see if they can reach some agreement. The government suggests, well, what about interrogatories to the CSO? The parties don't reach an agreement. The defense says, we'll set forth our position in our motions, we'll do this more formally. And in the motion, the defense says, we don't think that there is a need for a hearing. The court can and should reverse on this record. But in the alternative, if the court is not satisfied that the current record supports that result, that there ought to be an evidentiary hearing. The government doesn't file its own motion for an evidentiary hearing. It doesn't repeat its request for interrogatories of the CSO. It simply opposes the government's motion. And I read to the court precisely the totality of what it had to say about the need for any further fact-finding. At some point, the government complained about the triple hearsay. But then the court specifically dealt with it in a ticky-tock evidentiary manner. I don't see that the government actually said, you must have an evidentiary hearing at that stage, ever. It originally said something about it, just in general, but never said, we're objecting not that this evidence, we're objecting not just to the hearsay of it, but that the procedure itself is fundamentally flawed and can't be cured. You're correct about that, Your Honor. After the judge issued his decision on the defense motion, the government did not ask for reconsideration, did not file a motion of its own, did not say that we disagree with . . . Could you tell the court even that it's not just the hearsay, it's that you must have a hearing or else the thing has got to be thrown out? And the court . . . That's correct. The government . . . . . . in the Smith cases for flexibility, but are those in any way problematic for you? What the government points out about many of the cases at the defense side are two things. One, they come up in the context of a defense motion where the court felt there was no need to hold a hearing, and the government seems to suggest that there should be a different standard that applies to the government. Judge Southwick, you had asked about whether or not there's ever been . . . if the government has ever been successful in getting a reversal of a new trial motion on that basis. I think the closest we have is United States v. Williams, Your Honor, which is a case of this court that I think Judge Elrod might have been alluding to, where it was a defense motion, the trial court did not hold a hearing, and this court said even without a hearing, we can determine that there was an improper outside influence, and it reversed. The government then asked for reconsideration and said, well, don't reverse outright, remand it for an evidentiary hearing. We're entitled to at least an evidentiary hearing to try to disprove . . . the burden has now shifted to us, but we want an evidentiary hearing to try to prove it, and this court said no. But in deciding the motion for reconsideration, the government doesn't get a hearing. Now whether that's because of the passage of the time or because they're not always entitled to a hearing in the first instance, I don't think the court was entirely clear. But in either event, it certainly undermines the government's argument here that they're always entitled to a hearing because this court has, under very similar circumstances, not given them a hearing. I'd also note out-of-circuit case law that the government relies on, they rely on a case called Bishawi, B-I-S-H-A-W-I, which is a Seventh Circuit case, where there was a reversal of the grant of a new trial motion without an evidentiary hearing. In other words, the district court did what it did here, and the appellate court in that case did do what the government asked. It remanded for an evidentiary hearing rather than affirm outright. But what it said is that a post-trial evidentiary hearing may be proper to determine if the outside influence was harmless, and it set this standard. Where the record is void of any specific information regarding the occurrence and the nature of, as well as the impact on the jurors, a hearing is necessary. So if the court were to adopt that standard as to when the government gets a hearing, here there obviously is not a void of any specific information regarding the occurrence. We have three different law clerks who have told us what the CSO said. In the hearing case, the problem there was that we didn't even know if the juror had seen a newspaper article that was the problem. And here, so like you say here, there's not a question of whether there was a conversation. The precise details of the conversation may be debatable, but there was a conversation. There was a conversation. The evidence... It's somewhat shocking to me, to be honest with you, but... There was a conversation. There were actually apparently two conversations, but there was a conversation. There is reliable evidence that that conversation occurred. The government doesn't contend otherwise. In terms of the differences in the details, they're not material differences, and Judge Mazzant did not rely on them. For example, the law clerk who had the second conversation with the CSO says that the CSO told him that the juror that was emotionally upset said that she had reservations about the verdict. And then the CSO says, you know, if she voices those reservations, the verdict won't be accepted. And it was unclear whether he had actually said that to the juror or not. It was clear that the juror had said to him, I have reservations, but it was unclear whether he voiced that response or only thought that response and then told the law clerk. Judge Mazzant was very careful not to rely on that disputed statement. Every time that there was a dispute as to what was said, the Judge Mazzant very carefully noted in this instance there's a dispute, but regardless, I find that the undisputed statements are sufficient to warrant a new trial. So I agree we might not know in every respect precisely what was said, but we don't need to. We know that there is agreement from three different witnesses who are reliable and are contemporaneous as to what was said. And that really goes to your point about what a hearing would accomplish. Would the government— Let me ask you maybe to structure what you're about to say in a slightly different way. It seems to me that the government is exactly right. There's some pretty strong precedents in our circuit that says there needs to be a hearing. You're asking us to do something different. What would the rule be that doesn't undermine the precedents that are already there that you think fits your case, that would fit this case and is reasonable? I mean, the government is supposed to speak more generally on what the right thing to do is. Defense counsel isn't usually asked to do that, but let me ask you that. Well, there's nothing wrong with seeking a little free advice, Your Honor. First of all, I disagree with the premise that the case law is clear that there must be a hearing. There are any number of— There's strong language in there about having hearings. Let's just take it— Okay. There's also strong language in cases saying that whether or not to have a hearing is judged on abuse of discretion. But in any event, to answer the Court's question, I think that the passage that I just read from the Seventh Circuit case is a pretty good standard. In other words, the trial court does have broad discretion. We are not going to adopt a per se rule that there has to be a hearing in every case, much less dictate who has to testify at that hearing, which is what the government is seeking here. We are going to give the trial court discretion, but it's not unbounded discretion. In a case such as Bassani or a case referenced by Judge Haynes, where the record is void of specific information regarding the occurrence and nature of the external influence, then it would be an abuse of discretion not to hold a hearing to determine the occurrence and nature. But that is not this case. Under that standard, Judge Mazzant was well within his discretion not to hold a hearing because there is specific information. Not information that necessarily is admissible in a proceeding to which the rules of evidence apply, but the rules of evidence themselves say that they don't apply to miscellaneous proceedings and cite as specific examples any number of criminal proceedings that are post-trial proceedings, such as revocation hearings, such as sentencings, sentencing obviously a very significant proceeding. The rules of evidence don't apply according to Rule 1101. Rule 1101 excludes miscellaneous proceedings from the rules of evidence. So I think, Judge Southwick, that the rule that you've asked me to posit and the one that I have posited is fully consistent with the rules of evidence, which say that they don't apply to miscellaneous proceedings. It's fully consistent with Rule 33, which doesn't require that a hearing be held. It's fully consistent with the case law that says that district court has broad discretion into how to conduct the investigation. But it does address the case law that suggests that, at least in the ordinary case, some kind of inquiry, some kind of hearing needs to take place. And here, Judge Mazzant conducted an inquiry and developed a reliable ---- That's correct, Your Honor. And so I guess, as my time's running out, I'd like to finish on one point, and that really was yours, Judge Southwick, about what a hearing would accomplish. The government concluded its arguments by talking about how, well, we don't know whether the juror that was the holdout juror was going to acquit because of the fact that she didn't believe the case had been proven beyond a reasonable doubt or if she was going to acquit because of emotions. But a hearing's not going to resolve that. We're not going to have a hearing where we ask the juror, why were you in a position of being in favor of an acquittal? And then, after another hour and a half of deliberations and just 30 to 45 minutes after talking to CSO and after a juror who, I think it's a fair inference, was the same juror expressed that she had reservations, does she come around and vote guilty? A hearing is not going to establish that. All a hearing can establish is what did the CSO say to the juror and how did the juror respond? And we have a almost near contemporaneous reliable record of that. And so holding a hearing a year after the fact I don't think accomplishes anything. We know what statements were made and the judge very thoughtfully analyzed them and concluded that under his very broad discretion the interest of justice warranted a new trial. Thank you, Your Honor. Your Honor, just briefly on counsel's point that we did argue in response to the motion for a new trial that the court could deny the motion without holding a hearing but not grant it. And that's consistent with the burden of proof, as this Court said in Mix, that the initial burden does rest with the defendant. And we argued, the Court rejected... Who says that, though? The case cites that you cannot grant it without a hearing. Well... There's no case that actually holds that, is there? Well, there's not a case that we can cite that under these particular facts because this situation has never happened before. I mean... So there is no case that says this rule that you keep reciting, is there? Well, the Jordans themselves say in their brief that a motion for new trial that would change a trial's result should be denied when based on inadmissible evidence. They cite that in their brief. But Ramos, our case, says we do not understand Smith to require a full-blown evidentiary hearing in every instance in which an outside influence is brought to bear upon a petit juror. Our precedents allow the trial judge the flexibility within broadly defined parameters to handle such situations in the least disruptive manner possible. And Judge Mazant determined that the least disruptive manner possible in this circumstance was to rely on these documents and have these conferences and gave reasons for that about trial publicity, about the retrial. So why isn't that entirely consistent with our opinion in Ramos and Smith? Because Ramos is very different. There you had counsel for both sides participating in the questioning of the relevant witnesses. Here counsel never had an opportunity to address anybody, much less the relevant witnesses. The court, the day after the verdict, instructed us, I mean, appropriately, not to talk to the CSO, not to talk to the jurors. But we're barred from access, getting that type of information. So I still don't understand, though, where does your bright line rule come from? It comes from the Sylvester case. It is, Your Honor, where the court says if there's a credible allegation of outside influence, the failure to hold a hearing is reversible error. That's because they're ignoring it. The idea is you can't just ignore the outside influence and move on and go on your day. So that's not what's happening here. In fact, our prior instruction is that the trial court is flexible and can go by the type of case it is and what the particular circumstances are. Well, if they had ignored it, then yes, that would be reversible error. If the judge knew all this and pretended like he didn't, then that would be, if that ever came to light, it would be a big deal. Well, the cases emphasize that even when, and the Tarango case of the Jordans themselves say, even if the court knows everything that went on, under the rimmer, you're still entitled to a hearing. In Sylvester, this court... That's if you're not going to grant the relief so that they can try to explore it to see if it does merit relief. It doesn't mean if you already have overcome the threshold that you still get to try to ward off the new trial. There's no case that says that. But they do say that you can't overcome the threshold without an opportunity. The process is very important here, that counsel must have an opportunity to examine the relevant witnesses. Rimmer says that. Sylvester says that. In Forrest, a case that the Jordans themselves cite in their briefs, one of the defendant's friends called the juror, whose aunt was on the jury, and she put in a good word for the defendant. They called that juror in to ask exactly what happened, so that was in the record of what happened between those communications. The court still remanded it for an evidentiary hearing. They said that the marshals shall be questioned, the jurors shall be questioned, and there was a cross-examination. The process is very important here. Counsel, I'm very sympathetic to your point, and there's a lot at stake here after this lengthy trial. It does seem to me, though, that there still has to be a purpose for the hearing. You're not arguing here that anybody needed to be questioned other than the CSO, are you? That you needed a hearing to call anybody other than the CSO? We think, yes, Your Honor, that we can get everything that we need from the CSO. Which gets me back to, in this particular set of facts, which, well, I'll just leave it at that with your time up, and I won't ask a question. Thank you. Thank you. We have your argument. This case is submitted. Thank you. Thank you, counsel, on both sides.